**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

CERTAIN UNDERWRITERS AT        )
LLOYD'S, LONDON,               )
                Plaintiffs,        )
                       )
         Vs.                )        DOCKET NUMBER
                       )
R&B INVESTMENTS, LLC,          )
TIMOTHY J. RUSSELL,            )
THOMAS BRODERICK,              )
TRINITY GREEN INVESTMENTS, LLC, and)
BOARD OF TRUSTEES OF THE 488 DOT   )
CONDOMINIUM TRUST              )
                Defendants.        )

**COMPLAINT FOR DECLARATORY RELIEF AND CLAIM FOR JURY TRIAL**

**NATURE OF ACTION**

1.      This Complaint is a request for judgment declaring that an insurance policy issued by Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 ("Underwriters") does <u>not</u> require Underwriters to continue to defend, or to indemnify, R&B Investments, LLC, or its principals, relative to the claims brought against them in the case of *Board of Trustees of the 488 DOT Condominium Trust vs. R&B Investments, LLC, Timothy J. Russell d/b/a Russell Design Associates, and Thomas Broderick, Jr., Esq.*, Suffolk Superior Court C.A. No. 20-2009C (the "Underlying Action").  Underwriters are also seeking declarations that they have no duty to defend or indemnify Trinity Green Investments, LLC.

**JURISDICTION AND VENUE**

1

2.    This Court has jurisdiction over this matter under 28 USC § 1332 in that it arises between citizens of different states / countries and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

3.    Venue is proper in this district under 28 USC § 1391(a)(2) and (b)(2) as this action concerns a commercial insurance policy issued to R&B Investments, LLC ("R&B"), as developer of property located in Boston, Massachusetts, the policy was issued in Massachusetts, the insured risk is the property in Boston, and the work on the project that is the subject matter of the Underlying Action took place at the property in Boston, Massachusetts.

## PARTIES

4.    Underwriters are those individuals subscribing to a policy of insurance, Policy QML1443616, providing certain commercial general liability coverage, effective November 12, 2014 – October 31, 2016.

5.    R&B is a Massachusetts limited liability company with a principal place of business at 180 Canton Avenue, Milton, Massachusetts.

6.    Timothy J. Russell ("Russell") is an individual who, upon information and belief, resides at 58 Evergreen Street, Kingston, Massachusetts.

7.    Thomas Broderick, Jr. ("Broderick") is an individual who, upon information and belief, resides 180 Canton Avenue, Milton, Massachusetts.

8.    Russell is understood to have been a principal of R&B.

9.    The Complaint in the Underlying Action alleges Russell was also an architect and licensed construction supervisor who was engaged by R&B "to provide architectural services, as well as construction and development management services" relative to a condominium

construction project at 488 Dorchester Street, South Boston, Massachusetts, and the underlying plaintiff brings claims against him in those capacities.

10.     Broderick is understood to have been a principal of R&B.

11.     The Complaint in the Underlying Action alleges Broderick was also an attorney who was "the declarant - appointed Trustee of the 488 DOT Condominium Trust" and that he "served as the sole trustee of the Trust until May 23, 2017," and the underlying plaintiff brings claims against him in that capacity(ies).

12.     Trinity Green Investments, LLC ("Trinity") is a Massachusetts limited liability company with a principal place of business at 180 Canton Avenue, Milton, Massachusetts.

13.     Russell and Broderick are also the managers of Trinity.

## OTHER INTERESTED DEFENDANT PARTY

14.     The Board of Trustees of the 488 DOT Condominium Trust ("the Trust") is the plaintiff in the Underlying Action, and is the duly elected board of trustees of The 488 DOT Condominium Trust, under a Declaration of Trust dated August 16, 2016 that established the Trust as the organization of unit owners of the Condominium, said Trustees being owners of certain units at, and residents of, 488 Dorchester Street, South Boston, Massachusetts.

## BACKGROUND / FACTUAL ALLEGATIONS

15.     The Trust has filed the Underlying Action in Suffolk Superior Court, Civil Action No. 20-2009C, asserting claims against R&B, Broderick and Russell.  A true copy of the Complaint in that Underlying Action is attached hereto as Exhibit "A" (without copies of the trust documents originally filed with that Complaint).

16.     After being granted leave to amend, the Trust filed an Amended Complaint on or about March 23, 2021, adding Trinity as a defendant and asserting a claim of Fraudulent Transfer

against R&B and Trinity.  A true copy of the Amended Complaint in that Underlying Action is attached hereto as Exhibit "B" (without copies of the trust documents and deeds originally filed with that Amended Complaint).

17.      The claims in the Underlying Action all arise out of alleged construction and design defects relative to a condominium construction project involving the development of thirty-three (33) residential units and one commercial unit building at 488 Dorchester Street, South Boston, MA ("the Project").

18.      R&B purchased the property at 488 Dorchester Street, South Boston, MA, in late 2014, and retained Trinity as the general contractor for the Project.

19.      Trinity subcontracted all the construction work on the Project to subcontractors including Pro Construction, who in turn subcontracted with the siding, framing, drywall, painting, and roofing sub-subcontractors.

20.      Construction on the Project was completed in the Fall of 2016.

21.      Sales of condominium units began to close in November 2016.  Control of the Condominium Association was passed to the unit owners in 2017.

22.      The Trust's Amended Complaint alleges that on or about January 17, 2018, R&B conveyed the Commercial Unit developed in the Project to Trinity for less than "reasonably equivalent value in exchange for the transfer" "with actual intent to hinder, delay or defraud the [Trust]."

23.      The Trust asserts claims against R&B for Negligence, Breach of Implied Warranty, and Breach of Fiduciary Duty, alleging "significant defects in the design and/or construction of the Condominium common areas and facilities."

24.     The Trust's Complaint alleges the defects require the work to be corrected and that the Trust has expended, and will continue to expend, "sums to correct the material defects, deficiencies and inadequacies existing in said improvements and the resulting property damage."

25.     The Trust also alleges that the construction and/or design deficiencies resulted in "water infiltration issues associated with the building envelope" and caused "significant physical damage to the Condominium, including but not limited to, degradation of various other components of the Condominium common areas and facilities, degradation of the individual Condominium units, and a diminution in value of the Condominium common areas and facilities and/or units."

26.     The Trust alleges that R&B breached its fiduciary duty "as the declarant [of the Condominium Trust] and developer" to "submit the common areas and facilities" free from defects by submitting the common areas in a substandard condition, including design and construction defects, then failing and refusing to address and remediate the issues despite actual and/or constructive knowledge, and refraining from pursuing the Trust's claims against itself or "taking any other action concerning such deficiencies."

27.     The Trust asserts a separate claim against Broderick "as the sole Trustee of the organization of unit owners at the Condominium following the development and construction of the Condominium building and common areas and facilities," for breaching fiduciary duties by failing to ensure common areas and facilities were adequately and properly constructed, failing to repair or assess repairs during the time R&B as developer/declarant owned a substantial number of units, acting in his and R&B's interests and contrary to the interests and purposes of the Trust.

28.     The Trust asserts counts against Russell, "individually and d/b/a *Russell Design Associates*" for Negligence and Breach of Contract (as third party beneficiary) alleging that Russell was negligent regarding the design, the submission of certain certifications to the City of Boston

that common areas and facilities were in good condition and in compliance with applicable codes, rules and regulations ("the certifications"), and the supervision of construction on the Project.

29.     The Trust also asserts a count against Russell for Negligent Misrepresentation, alleging that the certifications submitted by Russell were inaccurate because the Condominium building, facilities and common areas "were not constructed in conformance with the submitted and approved plans and specifications" and all applicable rules, codes and regulations.

30.     In its Amended Complaint, the Trust asserts a count against R&B and Trinity alleging a Fraudulent Transfer of the Commercial Unit and seeking an order to "return the asset to the hands of R&B Investments, LLC."

31.     Underwriters are providing a defense to R&B in the Underlying Action under a reservation of rights.

## POLICY LANGUAGE

32.     At all times relevant hereto, Underwriters issued a commercial insurance policy, Policy QML1443616, to *R&B Investment, LLC,* whose business operations are described for premium classification purposes as "Real Estate Development Property – Excluding Products and/or Completed Operations," with a policy period beginning November 12, 2014, and extended by endorsements to October 31, 2016 ("the Policy").   A true and correct copy of the Policy is attached hereto as Exhibit "C."

33.     The Policy provides certain commercial general liability insurance coverage.

34.     The following relevant provisions appear in Section I of the Policy's *Commercial General Liability Coverage Form* (CG 00 01 12 04)*:*

### *COMMERCIAL GENERAL LIABILITY COVERAGE FORM*

*Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.*

*Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the company providing this insurance.*

*The word "insured" means any person or entity identified as such under Section II – Who is an Insured.*

*Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.*

***SECTION I – COVERAGES***
***COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY***
*1.*    ***Insuring Agreement***
    ***a.***    *We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result . . .*

    *No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.*

    ***b.***    *This insurance applies to "bodily injury" and "property damage" only if:*
    ***(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the coverage territory;*
    ***(2)** The "bodily injury" or "property damage" occurs during the policy period; and . . .*
    *. . .*

*2.*    ***Exclusions***

    *This insurance does not apply to:*

        ***a.   Expected or Intended Injury***

*"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.*
. . .

### j. Damage to Property

*(1)      Property you own, rent or occupy, including costs and expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;*

*(2)      Premises you sell, give away or abandon, if the "property damage" arises out of any party of those premises;*
. . .
*(5)      That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the property damage arises out of those operations; or*

*(6)      That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.*
. . .

*Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.*
...

*Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."*
. . .

### m. Damage to Impaired Property or Property Not Physically Injured

*"Property damage" to "impaired property" or property that has not been physically injured, arising out of:*
*(1) a defect, deficiency, inadequacy, or dangerous condition in "your product" or "your work"*
...
*This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.*
. . .

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

*1.*     ***Insuring Agreement***
*a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.*
*. . .*

35.     Section II of the Policy's *Commercial General Liability Coverage Form* governs

who qualifies as an insured under the following relevant provisions:

**SECTION II – WHO IS AN INSURED**

*1.*     *If you are designated in the Declarations as:*
*. . .*
*c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.*
*. . .*

*No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.*
*. . .*

36.     The Policy defines the terms applicable to Coverage A – Bodily Injury and Property

Damage Liability and Coverage B – Personal and Advertising Injury Liabiltiy in Section V,

including:

**SECTION V – DEFINITIONS**
*. . .*
*8.     **"Impaired property"** means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:*
*a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or*
*b. You have failed to fulfill the terms or a contract or agreement;*

*if such property can be restored to use by:*
*a. The repair, replacement, adjustment, or removal of "your product" or "your work"; or*

     *b.   Your fulfilling the terms of the contract or agreement.*

*. . .*

13.    **"Occurrence"** *means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.*

14.    **"Personal and advertising injury"** *means injury, including consequential "bodily injury", arising out of one or more of the following offenses:*

    *a. False arrest, detention or imprisonment;*

    *b. Malicious prosecution;*

    *c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;*

    *d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;*

    *e. Oral or written publication, in any manner, of material that violates a person's right of privacy;*

    *f. The use of another's advertising idea in your "advertisement"; or*

    *g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".*

    *. . .*

16.    **"Products-completed operations hazard":**

    *a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:*

     *. . .*

       *(2) Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:*

          *(a) When all of the work called for in your contract has been completed.*

          *(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.*

          *(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.*

       *Work that may need service, maintenance, correction, repair, or replacement, but which is otherwise complete, will be treated as completed.*

       *. . .*

17.    **"Property damage"** *means:*

    *a.  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that cause it; or*

*b. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the occurrence that caused it. ...*

  *. . .*

22.    *"Your work":*
    *a. Means:*
     *(1) Work or operations performed by you or on your behalf; and*
     *(2) Materials, parts, or equipment furnished in connection with such work or operations.*
    *b. Includes:*
     *(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and*
     *(2) The providing or failure to provide warnings or instructions.*

37.    The Policy includes an endorsement labeled **Exclusion - Independent Contractors**, LLICEXCL(04/98) that provides:

*This insurance does not apply to "bodily injury", "property damage" . . . for operations performed for you by independent contractors or your acts or omissions in connection with your general supervision of such operations.*

38.    The Policy's **CGL BLANKET ENDORSEMENT CNL- El02 (01-08),** also adds a Classification Limitation and a section of "Additional Exclusions" providing in pertinent part as follows:

   ***A.    Classification Limitation***

   *Coverage under this policy is specifically limited to those operations described by the classification(s) in the Commercial General Liability Coverage Part Declarations.  This policy does not apply to any operations not specifically listed in the Commercial General Liability Coverage Part Declarations or endorsed hereon.*
   *. . .*
***C.    Additional Exclusions***

*The following exclusions are added to the policy:*

   *This insurance does not apply to:*

11

### 3. Employees of Independent Contractors

*"Bodily injury", "property damage", "personal and advertising injury", or any injury, loss or damage:*

a. *Sustained by any employee of an independent contractor contracted by you or on your behalf; or*
b. *Arising out of operations performed for you by independent contractors or your acts or omissions in connection with your general supervision of such operations.*

*. . .*

### 12. Professional Services Exclusion

A. *The following exclusion is added to Paragraph 2., Exclusions to Section I – Coverage A – Bodily Injury and Property Damage Liability:*

*This insurance does not apply to "bodily injury" or "property damage" arising out of failure to render any type of professional service. We will have no duty to defend the insured against any "suit" or share in any loss with another insurer who has a duty to defend or pay damages arising from same.*
*...*

39.    In addition, the Policy includes an endorsement labeled **Exclusion – Products-Completed Operations Hazard,** CG 21 04 11 85, that provides:

*This insurance does not apply to "bodily injury" or "property damage" included within the "products-completed operations hazard."*

## DECLARATIONS THAT RUSSELL AND BRODERICK DO NOT QUALIFY AS INSUREDS FOR CLAIMS ASSERTED IN THE UNDERLYLING ACTION

### COUNT I – DECLARATION THAT RUSSELL DOES NOT QUALIFY AS AN INSURED FOR CLAIMS BROUGHT AGAINST HIM IN THE UNDERLYING ACTION

40.    The Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 39 as if fully stated herein.

41.    An actual controversy within the jurisdiction of this Court exists between the parties as to whether or not Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616

are required to defend or indemnify Russell for the claims asserted against him in the Underlying Action.

42.   The Policy was issued to R&B, a limited liability company, whose operations are classified as "Real Estate Development Property – Excluding Products and/or Completed Operations."

43.   Relative to limited liability companies, the Policy considers a company's *members* to be insureds, *but only with respect to the conduct of [the company's] business;* the Policy also considers a company's *managers* to be insureds*, but only with respect to their duties as your managers.*

44.   Counts V through VII of the Amended Complaint in the Underlying Action are against Russell individually*, doing business as "Russell Design Associates,"* and not against him as a member or manager of R&B.

45.   Russell does not qualify as an insured relative to the claims asserted against him in Counts V, VI, or VII.

WHEREFORE, the plaintiffs, Underwriters, request a judgment declaring as follows:

a.   That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 are not required to provide Russell with a defense relative to all claims asserted in the Underlying Action against him individually and doing business as Russell Design Associates (Counts V through VII) because of applicable and controlling language contained in the Policy.

b.   That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 are not required to indemnify Russell relative to all claims asserted in the

Underlying Action against him individually and doing business as Russell Design Associates (Counts V through VII) because of applicable and controlling language.

c.      That Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 be awarded all other relief allowed by law or equity which the Court deems appropriate and just.

## COUNT II – DECLARATION THAT BRODERICK DOES NOT QUALIFY AS AN INSURED FOR CLAIMS BROUGHT AGAINST HIM IN THE UNDERLYING ACTION

46.     The Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 45 as if fully stated herein.

47.     An actual controversy within the jurisdiction of this Court exists between the parties as to whether or not Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 are required to defend or indemnify Broderick for the claims asserted against him in the Underlying Action.

48.     The Policy was issued to R&B, a limited liability company, whose operations are classified as "Real Estate Development Property – Excluding Products and/or Completed Operations."

49.     Relative to limited liability companies, the Policy considers a company's *members* to be insureds, *but only with respect to the conduct of [the company's] business;* the Policy also considers a company's *managers* to be insureds*, but only with respect to their duties as your managers.*

50.     Count IV of the Amended Complaint in the Underlying Action is against Broderick *"as the sole Trustee of the organization of unit owners at the Condominium following the development and construction,"* not as a member or manager of R&B.

51.     Broderick does not qualify as an insured relative to the claim asserted against him in Counts IV.

WHEREFORE, the plaintiffs, Underwriters, request a judgment declaring as follows:

a.      That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 are not required to provide Broderick with a defense relative to all claims asserted in the Underlying Action against him *as the sole Trustee of the organization of unit owners at the Condominium following the development and construction* (Count IV) because of applicable and controlling language contained in the Policy.

b.      That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 are not required to indemnify Broderick relative to all claims against him (Count IV) because of applicable and controlling language.

c.      That Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 be awarded all other relief allowed by law or equity which the Court deems appropriate and just.

## DECLARATIONS THAT TRINITY DOES NOT QUALIFY AS AN INSURED

## COUNT III – DECLARATION THAT TRINITY DOES NOT QUALIFY AS AN INSURED

52.     The Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 51 as if fully stated herein.

53.     An actual controversy within the jurisdiction of this Court exists between the parties as to whether or not Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 are required to defend or indemnify Trinity for the claims asserted against it in the Underlying Action.

54.     Trinity is not a named insured on the Policy that was issued to R&B.

55.     While they share principals, R&B and Trinity are separate entities.

56.     The Policy's Who Is An Insured section provides:  *No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.*

57.     Trinity, either as the general contractor retained by R&B, or if considered a partner or joint venturer with R&B relative to the Project, does not qualify as an insured under the Policy.

58.     Trinity, as the alleged recipient of fraudulently transferred property and/or as a co-participant in the allegedly fraudulent transfer, does not qualify as an insured relative to the claim asserted against it.

WHEREFORE, the plaintiffs, Underwriters, request a judgment declaring as follows:

a.      That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 are not required to provide Trinity with a defense relative to all claims asserted in the Underlying Action against it (Counts VIII) because of applicable and controlling language contained in the Policy.

b.      That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 are not required to indemnify Trinity relative to all claims asserted in the Underlying Action because of applicable and controlling language.

c.      That Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 be awarded all other relief allowed by law or equity which the Court deems appropriate and just.


## DEFECTIVE / DEFICIENT CONSTRUCTION-RELATED DECLARATIONS

### COUNT IV – DECLARATION THAT SOME OR ALL OF THE CLAIMS FOR DEFECTIVE AND/OR DEFICIENT CONSTRUCTION ARE OUTSIDE THE SCOPE OF COMMERCIAL GENERAL LIABILITY COVERAGE AND/OR DO NOT QUALIFY FOR COVERAGE UNDER COVERAGE A

59.     The Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 58 as if fully stated herein.

60.     An actual controversy within the jurisdiction of this Court exists between the parties as to whether or not Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 are required to defend or indemnify R&B or its principals for the claims asserted in the Underlying Action.

61.     To qualify for coverage under the Policy's Coverage A, ***COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY,*** the claims against the insured must involve *"bodily injury" or "property damage" caused by an "occurrence"* and such *"bodily injury" or "property damage"* must *occur[ ] during the policy period.*

62.     Some or all of the claims involve allegations of negligent, defective and/or deficient construction that do not qualify as "property damage" under the Policy.

63.     Some or all of the claims involve allegations of negligent, defective and/or deficient construction that, even if deemed to involve "property damage" under the Policy, do not involve "property damage" caused by an "occurrence."

64.     Some or all of the claims of negligent, defective and/or deficient construction fall outside of the scope of commercial general liability coverage and/or the triggering language as found in the "Insuring Agreement" provisions to Coverage A and, therefore, do not qualify for coverage under Coverage A.

WHEREFORE, the plaintiffs, Underwriters, request a judgment declaring as follows:

a.     That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 are not required to provide any party with a defense relative to all claims

asserted in the Underlying Action because of applicable and controlling language contained in the Policy.

b.      That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 are not required to indemnify any party relative to some or all claims asserted in the Underlying Action because of applicable and controlling language.

c.      That Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 be awarded all other relief allowed by law or equity which the Court deems appropriate and just.

## COUNT V – DECLARATION THAT CLAIMS OF "PROPERTY DAMAGE" ARE BARRED BY THE *EMPLOYEES OF INDEPENDENT CONTRACTORS* EXCLUSIONS

65.     The Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 64 as if fully stated herein.

66.     An actual controversy within the jurisdiction of this Court exists between the parties as to whether or not Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 are required to defend or indemnify R&B or its principals for the claims asserted in the Underlying Action.

67.     The Policy excludes coverage for any claim for "property damage" *[a]rising out of operations performed for you by independent contractors or your acts or omissions in connection with your general supervision of such operations.*

68.     All claims in the Underlying Action (with the exception of the Fraudulent Transfer claim) involve allegations of defects in the design and/or construction of the Condominium common areas, facilities and/or units, including allegations involving "resultant property damage."

69.     All construction work on the Project was performed by subcontractors and sub-subcontractors.

70.     As R&B was the developer, all of the subcontractors' and/or sub-subcontractors' operations were performed for R&B.

71.     Coverage for all claims against R&B, including claims involving any alleged resultant damage for which damages are sought in the Underlying Action, is excluded by the Policy's **Exclusion - Independent Contractors** and/or the second sub-section of the CGL Blanket Endorsement's "**Employees of Independent Contractors**" exclusion.

WHEREFORE, the plaintiffs, Underwriters, request a judgment declaring as follows:

a.     That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 are not required to provide any party with a defense to any claim asserted in the Underlying Action because of applicable and controlling language and/or exclusions contained in the Policy.

b.     That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 are not required to indemnify any defendant for any claim asserted against them in the Underlying Action because of the Policy's **Independent Contractor** exclusions.

c.     That Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 be awarded all other relief allowed by law or equity which the Court deems appropriate and just.

## COUNT VI – DECLARATION THAT CLAIMS OF "PROPERTY DAMAGE" ARE BARRED BY THE *PRODUCTS-COMPLETED OPERATIONS* EXCLUSION

72.     The Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 71 as if fully stated herein.

73.     An actual controversy within the jurisdiction of this Court exists between the parties as to whether or not Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 are required to defend or indemnify R&B or its principals for the claims asserted in the Underlying Action.

74.   The Policy excludes coverage for any claim for *"property damage" included within the "products-completed operations hazard."*

75.   The Policy defines the *"products-completed operations hazard"* in relevant part to mean *"property damage" occurring away from premises you own or rent and arising out of ... "your work"* that is completed, meaning *When all of the work called for in your contract has been completed* and/or *When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.*

76.   Construction on the Project was completed in the Fall of 2016, and units were sold beginning in or about November 2016.

77.   The claims allegedly involving "property damage," including alleged "resultant damage," all arise out of "completed operations" at the Property.

78.   Coverage for all claims and damages involving alleged "property damage" / "resultant damage" in the Underlying Action is excluded by the **Products-Completed Operations Hazard** exclusion.

WHEREFORE, the plaintiffs, Underwriters, request a judgment declaring as follows:

a.   That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 are not required to provide any party with a defense to any claim asserted in the Underlying Action because of applicable and controlling language and/or exclusions contained in the Policy.

b.   That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 are not required to indemnify any defendant for any claim for "property

damage" asserted against them in the Underlying Action because of the Policy's "***Exclusion –***

***Products-Completed Operations Hazard.***"

      c.      That Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616

be awarded all other relief allowed by law or equity which the Court deems appropriate and just.

### COUNT VII – DECLARATION THAT ANY "PROPERTY DAMAGE" DEEMED TO HAVE OCCURRED BEFORE WORK WAS COMPLETED IS BARRED BY THE EXCLUSION "DAMAGE TO PROPERTY," EXCLUSION j(1)

      79.      The Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through

78 as if fully stated herein.

      80.      An actual controversy within the jurisdiction of this Court exists between the parties

as to whether or not Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616

are required to defend or indemnify R&B or its principals for the claims asserted in the Underlying

Action.

      81.      The Policy excludes from Coverage A any claim for damage to:

    *j(1)*      *Property you own, rent or occupy, including costs and expenses incurred by you, or*

*any other person, organization or entity, for repair, replacement, enhancement, restoration*

*or maintenance of such property for any reason, including prevention of injury to a person*

*or damage to another's property;*

      82.      To the extent any claim for "property damage" is deemed not to be included within

the "products-completed operations hazard," such claim involves property that was damaged while

the Project was ongoing, and, therefore, property that was owned by R&B.

      83.      Any claim for "property damage" that is not excluded by the Exclusion – Products-

Completed Operations is excluded by ***exclusion j(1)*** applicable to Coverage A.

      WHEREFORE, the plaintiffs, Underwriters, request a judgment declaring as follows:

a.      That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 are not required to provide any party with a defense to any claim asserted in the Underlying Action because of applicable and controlling language and/or exclusions contained in the Policy.

b.      That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 are not required to indemnify any defendant for any claim for "property damage" asserted against them in the Underlying Action because of the Policy's ***"Damage to Property," exclusion j(1).***

c.      That Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 be awarded all other relief allowed by law or equity which the Court deems appropriate and just.

### COUNT VIII – DECLARATION THAT SOME OR ALL OF THE ALLEGEDLY DEFICIENT AND/OR DEFECTIVE CONSTRUCTION AND/OR RESULTANT "PROPERTY DAMAGE" ARE BARRED BY THE EXCLUSION "DAMAGE TO PROPERTY" AND/OR "IMPAIRED PROPERTY" EXCLUSIONS

84.     The Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 83 as if fully stated herein.

85.     An actual controversy within the jurisdiction of this Court exists between the parties as to whether or not Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 are required to defend or indemnify R&B or its principals for the claims asserted in the Underlying Action.

86.     The Policy excludes from Coverage A any claim for any claim for damage to:

*j(5)     That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the property damage arises out of those operations; or*

22

*j(6)   That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.*

87.   The Policy also excludes from Coverage A any claim for "property damage" to

*m.   impaired property" or property that has not been physically injured, arising out of: ... a defect, deficiency, inadequacy, or dangerous condition in ... "your work."*

88.   The Trustees allege that they have incurred and will incur expenses, and have suffered damage, based on design and construction defects relative to work performed on the Project.

89.   Some or all of the claims of negligent, defective and/or deficient construction and resultant property damage are excluded from Coverage A by the exclusions for **"Damage to Property"** (exclusions j(5) and/or j(6)) and/or **"Damage to Impaired Property or Property Not Physically Injured"** (exclusion m).

WHEREFORE, the plaintiffs, Underwriters, request a judgment declaring as follows:

a.   That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 are not required to provide R&B or its principals with a defense relative to all claims asserted in the Underlying Action because of applicable and controlling language and/or exclusions contained in the Policy.

b.   That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 are not required to indemnify relative to some or all claims asserted in the Underlying Action because of Policy's **"Damage to Property"** exclusions (j(5) and/or j(6)) and/or **"Damage to Impaired Property or Property Not Physically Injured,"** exclusion m.

c.      That Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 be awarded all other relief allowed by law or equity which the Court deems appropriate and just.

## DESIGN-RELATED DECLARATIONS

### COUNT IX – DECLARATION THAT ALL CLAIMS RELATING TO ALLEGEDLY DEFICIENT AND/OR DEFECTIVE DESIGN ARE BARRED BY THE "CLASSIFICATION LIMITATION"

90.     The Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 89 as if fully stated herein.

91.     An actual controversy within the jurisdiction of this Court exists between the parties as to whether or not Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 are required to defend or indemnify R&B or its principals for the claims asserted in the Underlying Action.

92.     By endorsement, the Policy's coverage *is specifically limited to those operations described by the classification(s) in the Commercial General Liability Coverage Part Declarations. This policy does not apply to any operations not specifically listed in the Commercial General Liability Coverage Part Declarations or endorsed hereon.*

93.     The Policy's Declarations classify R&B's operations as "Real Estate Development Property – Excluding Products and/or Completed Operations."

94.     R&B's operations as described in the Commercial General Liability Coverage Part Declarations do not include design or architectural services.

95.     The Trustees allege that they have incurred and will incur expenses, and have suffered damage, based on design and construction defects relative to work performed on the Project.

96.     All of the claims of negligent, defective and/or deficient design and resultant property damage related to design deficiencies are precluded by the ***Classification Limitation***.

WHEREFORE, the plaintiffs, Underwriters, request a judgment declaring as follows:

a.     That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 are not required to provide a defense to any party relative to all claims asserted in the Underlying Action because of applicable and controlling and/or exclusionary or limiting language contained in the Policy.

b.     That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 are not required to indemnify any party relative to all design-related claims asserted in the Underlying Action because of the ***Classification Limitation***.

c.     That Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 be awarded all other relief allowed by law or equity which the Court deems appropriate and just.

### COUNT X – DECLARATION THAT ALL CLAIMS RELATING TO ALLEGEDLY DEFICIENT AND/OR DEFECTIVE DESIGN ARE BARRED BY THE "PROFESSIONAL SERVICES EXCLUSION"

97.     The Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 96 as if fully stated herein.

98.     An actual controversy within the jurisdiction of this Court exists between the parties as to whether or not Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 are required to defend or indemnify R&B or its principals for the claims asserted in the Underlying Action.

99.     The Policy excludes from coverage any *"property damage" arising out of failure to render any type of professional service.*

100.     Architecture and design involve professional services.

101.    The Trustees allege that they have incurred and will incur expenses, and have suffered damage, based on <u>design</u> and construction defects relative to work performed on the Project.

102.    All of the claims of negligent, defective and/or deficient design and resultant property damage related to design deficiencies are excluded by the ***Professional Services Exclusion***.

WHEREFORE, the plaintiffs, Underwriters, request a judgment declaring as follows:

a.    That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 are not required to provide a defense to any party relative to all claims asserted in the Underlying Action because of applicable and controlling language and/or exclusions contained in the Policy.

b.    That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 are not required to indemnify any party relative to all design-related claims asserted in the Underlying Action because of the ***Professional Services Exclusion***.

c.    That Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 be awarded all other relief allowed by law or equity which the Court deems appropriate and just.

## FRAUDULENT TRANSFER-RELATED DECLARATIONS

## COUNT XI – DECLARATION THAT THE ALLEGED FRAUDULENT TRANSFER OF THE COMMERCIAL UNIT OCCURRED OUTSIDE OF THE POLICY'S EFFECTIVE DATES

103.    The Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 102 as if fully stated herein.

104.    An actual controversy within the jurisdiction of this Court exists between the parties as to whether or not Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616

26

are required to defend or indemnify R&B, its principals, or Trinity for the claims asserted in the Underlying Action.

105.    The Policy's liability coverage requires either "bodily injury" or "property damage" caused by an "occurrence" during the Policy's effective dates, or a specifically enumerated "personal and advertising injury" offense committed during the Policy's effective dates.

106.    The Trust asserts a count for Fraudulent Transfer against R&B and Trinity based on the conveyance of the Commercial Unit developed in the Project on or about January 17, 2018.

107.    The Policy's effective dates, as extended by endorsements, are November 12, 2014 through October 31, 2016.

108.    The alleged Fraudulent Transfer occurred or was committed after the Policy's effective dates and, therefore, fails to trigger any potential coverage under Coverage A or Coverage B.

WHEREFORE, the plaintiffs, Underwriters, request a judgment declaring as follows:

a.    That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 are not required to provide a defense to any party relative to all claims asserted in the Underlying Action because of applicable and controlling language contained in the Policy.

b.    That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 are not required to indemnify any party relative to the Fraudulent Transfer claim(s) asserted in the Underlying Action because the transfer is alleged to have occurred and/or the fraud to have been committed outside the Policy's effective dates.

c.    That Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 be awarded all other relief allowed by law or equity which the Court deems appropriate and just.

**COUNT XII – DECLARATION THAT ALL CLAIMS RELATING TO THE ALLEGED FRAUDULENT TRANSFER OF THE COMMERCIAL UNIT FALL OUTSIDE OF THE POLICY'S GENERAL LIABILITY COVERAGE**

109.    The Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 108 as if fully stated herein.

110.    An actual controversy within the jurisdiction of this Court exists between the parties as to whether or not Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 are required to defend or indemnify R&B, its principals, or Trinity for the claims asserted in the Underlying Action.

111.    The Policy's liability coverage requires either "bodily injury" or "property damage" caused by an "occurrence" during the Policy's effective dates, or a specifically enumerated "personal and advertising injury" offense committed during the Policy's effective dates.

112.    The Trust alleges that R&B conveyed the Commercial Unit "with actual intent to hinder, delay or defraud the [Trust]."

113.    The alleged fraudulent transfer does not involve an accidental "occurrence."

114.    Relative to its count for Fraudulent Transfer, the Trust seeks an order to "return the asset to the hands of R&B Investments, LLC."

115.    The claim for fraudulent transfer does not seek damages *because of "bodily injury" or "property damage,"* and is therefore outside the scope of Coverage A.

116.    The claim for fraudulent transfer does not involve any of the specifically enumerated "personal and advertising injury" offenses, and is therefore outside the scope of Coverage B.

WHEREFORE, the plaintiffs, Underwriters, request a judgment declaring as follows:

a.      That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 are not required to provide a defense to any party relative to all claims asserted in the Underlying Action because of applicable and controlling language and/or exclusions contained in the Policy.

b.      That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 are not required to indemnify any party relative to the Fraudulent Transfer claim(s) asserted in the Underlying Action because the allegations do not state or suggest a claim within the scope of Coverage A or Coverage B.

c.      That Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 be awarded all other relief allowed by law or equity which the Court deems appropriate and just.

## COUNT XIII – DECLARATION THAT ALL CLAIMS RELATING TO THE ALLEGED FRAUDULENT TRANSFER OF THE COMMERCIAL UNIT ARE PRECLUDED UNDER COVERAGE A BY THE "EXPECTED OR INTENDED INJURY" EXCLUSION

117.    The Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 116 as if fully stated herein.

118.    An actual controversy within the jurisdiction of this Court exists between the parties as to whether or not Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 are required to defend or indemnify R&B, its principals, or Trinity for the claims asserted in the Underlying Action.

119.    The Policy excludes from Coverage A any *"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.*

120.    Count VIII of the Amended Complaint alleges that R&B conveyed the Commercial Unit "with actual intent to hinder, delay or defraud the [Trust].".

121.    The count for Fraudulent Transfer alleges an expected or intended injury.

122.    The claim(s) for Fraudulent Transfer are excluded from Coverage A by the ***Expected or Intended Injury Exclusion***.

WHEREFORE, the plaintiffs, Underwriters, request a judgment declaring as follows:

a.    That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 are not required to provide a defense to any party relative to all claims asserted in the Underlying Action because of applicable and controlling language and/or exclusions contained in the Policy.

b.    That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 are not required to indemnify any party relative to Fraudulent Transfer claim(s) asserted in the Underlying Action because of the ***Expected or Intended Injury Exclusion***.

c.    That Certain Underwriters at Lloyd's, London subscribing to Policy QML1443616 be awarded all other relief allowed by law or equity which the Court deems appropriate and just.

### THE PLAINTIFFS CLAIM A TRIAL BY JURY ON ALL ISSUES SO TRIABLE

Certain Underwriters at Lloyd's, London,
By Their Attorney:

Dated:  May 21, 2021                         _____/s/ Thomas B. Farrey, III_____
                                            **THOMAS B. FARREY, III**
                                            **JAMES P. McLARNON, JR**
                                            Burns & Farrey, P.C.
                                            446 Main Street, 22nd Floor
                                            Worcester, MA  01608
                                            Tel.:    508.756.6288
                                            BBO:  159880 / 634568
                                            EMail:  farrey@burnsandfarrey.com
                                                     mclarnon@burnsandfarrey.com

JPM/
(LO409)
4815-2523-3893, v. 1